UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:00cr111-1 |
| | : | |
| | : | (Judge Susan J. Dlott) |
| vs. | : | |
| | : | |
| GREGORY GALLATIN, | : | |
| | : | |

_____

### SENTENCING MEMORANDUM ON BEHALF OF GREGORY GALLATIN
_____

Now comes Defendant Gregory Gallatin, by and through his undersigned counsel, and hereby submits the following sentencing memorandum for consideration by this Court. For the reasons that are set forth herein, Gregory Gallatin requests this Honorable Court impose a new sentence of 46-48 months in the Bureau of Prisons.

Respectfully Submitted,

/s/ Bryan R. Perkins
_____
Bryan R. Perkins (0061871)
Attorney for Defendant
119 E. Court Street
Suite 314
Cincinnati, Ohio 45202

### MEMORANDUM OF LAW

**I. Procedural Posture**

Mr. Gallatin pled guilty to Counts 1 and 3 of the indictment. Count 1 was for Conspiracy to Distribute Marijuana in violation of 21 U.S.C. § 846. Count 3 was for Possession with Intent to

Distribute Marijuana in violation of 21 U.S.C. § 841.

On July 29, 2002, this Court imposed a sentence of 110 months imprisonment.

Mr. Gallatin appealed to the Sixth Circuit Court of Appeals. The Sixth Circuit Court of Appeals affirmed his sentence. Mr. Gallatin then filed for a writ of certiorari in the United States Supreme Court.

Subsequent to the Sixth Circuit's affirming Mr. Gallatin's sentence, the United States Supreme Court decided the case of *United States v. Booker*, 125 S.Ct. 738 (2005).

On the authority of *Booker*, the United States Supreme Court remanded Mr. Gallatin's case to the Sixth Circuit Court of Appeals.  On March 3, 2005, the Sixth Circuit Court of Appeals remanded Mr. Gallatin's case to the District Court for the imposition of a new sentence in compliance with *Booker*.

Mr. Gallatin stands before this Court for the imposition of a new sentence.

## II.     Argument

### A.     Mr. Gallatin's Sentence Pursuant to Advisory Guidelines after *Booker*.

In *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531 (2004), the Supreme Court held that the Sixth Amendment right to trial by jury applies to sentencing guidelines and that juries, not judges, must find facts relevant to sentencing. In *United States v. Booker*, 125 S.Ct. 738 (2005), the Supreme Court specifically stated that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."  However, the Guidelines are preserved as an advisory scheme to be considered by federal district judges in tailoring appropriate sentences.  *Booker* at 756.

#### 1.     Weight of the Marijuana: A *Factual* Determination.

In Mr. Gallatin's original Pre-Sentence Investigation Report ("PSI") he was erroneously assigned a base offense of level 26.  This increase rested entirely upon an alleged statement made by Mueller in which he claimed that he made monthly trips between September 2000 and November

2000 to retrieve marijuana and that on each trip he transported between 150 and 200 pounds. Based on this alleged statement, the probation department made a factual determination that Mr. Gallatin was "responsible for 609 pounds of marijuana." (PSI at ¶ 29) This resulted in a base offense level of 26. (PSI at ¶ 30)

First and foremost, this factual conclusion is problematic under *Booker*. Mr. Gallatin never admitted he was responsible for 609 pounds of marijuana, and a jury did not make this factual determination. Therefore, it was erroneous to hold Mr. Gallatin responsible for this amount of marijuana and impose a base offense level of 26.

Second, the conclusion that the probation department made regarding the 609 pounds is baseless. According to written statement of Mueller (see attached), the first mention he makes of transporting marijuana with Mr. Gallatin, was in late November of 2000, and that was the one instance that led to Mr. Gallatin's arrest. There was no basis to conclude that Mr. Gallatin made monthly trips between September and November of 2000.

For purposes of his new sentence, Mr. Gallatin concedes that the record indicates the amount of marijuana recovered from his residence was 104 pounds, and the transaction involving Mueller involved 55 pounds, for a total of 159 pounds. Pursuant to the guidelines, this amount of marijuana results in a base offense level of 22. (159 pounds = 72.3 kilograms) (See Drug Quantity Table § 2D.1.1(c)(9)).

### 2. Adjustment for Role in the Offense: A *Factual* Determination.

In Mr. Gallatin's original PSI, his offense level was increased by 2 points as the probation department determined that Mr. Gallatin was a leader as defined in U.S.S.G. § 3B1.1(c). (PSI at ¶ 33) Again, this was a factual determination that could only be used to increase Mr. Gallatin's sentence if a jury made this determination, or if Gallatin admitted it. Neither of which is present in this case. Therefore, Gallatin's adjusted offense level must remain at 22.

Even beyond *Booker's* prohibition that this factual determination be made by a jury, there was no factual basis to conclude Mr. Gallatin was a supervisor or a leader. At worse, Mr. Gallatin and

Mueller were equals, working together as participants in the enterprise. The true leaders or supervisors would have been those supplying the marijuana in Texas, and supervising all operations.

Looking at the true facts, Mr. Gallatin would submit that he was a "minor participant" in this conspiracy, and moves this Court for a further 2 point reduction pursuant to U.S.S.G. § 3B1.2.

### 3. Reduction for Acceptance of Responsibility.

Mr. Gallatin is entitled to have 2 points deducted for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) (PSI at ¶ 36), and 1 point deducted for timely notification of his intent to plead guilty pursuant to U.S.S.G § 3E1.1(b), (PSI at ¶ 37). Mr. Gallatin's total offense level is <u>17</u>, (or <u>19</u> if this Court does not find him to be a "minor participant.")

### 4. Criminal History

Mr. Gallatin's original PSI places him in a criminal history category of VI, based upon 13 criminal history points. (PSI at ¶ 63) Mr. Gallatin submits that the imposition of 2 criminal history points for two minor misdemeanor tickets (PSI at ¶¶ 53, 62) unnecessarily overstate his criminal history. Further, Mr. Gallatin's drug-related offenses are for marijuana. He has no convictions for involvement with the more dangerous drugs of cocaine, heroine, methamphetamine, etc.

Also, Mr. Gallatin received 3 criminal history points for a 1990 theft conviction in which he stole a VCR. (PSI at ¶ 44) He received 1 point for a 1992 conviction for shoplifting cigarettes. (PSI at ¶ 47) Mr. Gallatin received 2 points for a 1994 conviction for shoplifting two pairs of Fila shoes from Value City valued at $ 19.99. (PSI at ¶ 52) These are all petty offenses that led to an unfair overstatement of Mr. Gallatin's Criminal History Category.

If the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history, a downward departure may be warranted. U.S.S.G. § 4A1.3(b). Mr. Gallatin's criminal history is more properly reflected in Category V or less.

With a base offense level of <u>19</u>, and a criminal history category of V, the guideline range would be 57-71 months. If this Court finds Mr. Gallatin to be a minor participant at level <u>17</u>, his guideline range is 46-57 months. In the original PSI, the probation officer felt that a sentence at the low-end of

the Guidelines was appropriate. Therefore, a new sentence of 46 or 57 months would be adequate pursuant to the Guidelines.

Even if this Court felt that Mr. Gallatin should remain in a Criminal History Category of VI, the guideline range would be 63-78 months at offense level <u>19</u>, and 51-63 months at level <u>17</u>. Therefore, the longest sentence pursuant to the Guidelines, if this Court rejected Mr. Gallatin's criminal history reduction, and his role reduction motion, would be 63 months.

    **B.**    **Mr. Gallatin's Statutory Sentence.**

Pursuant to 18 U.S.C. § 3553(a), a court is to consider the following factors when imposing a sentence:

(1) the nature and circumstances of the offenses and the history and characteristics of the defendant;

(2) the need for the sentence imposed –

    (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B)    to afford adequate deterrence to criminal conduct;

    (C)    to protect the public from further crimes of the defendant; and

    (D)    to provide the defendant with the needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

These factors, applied to Mr. Gallatin's case, mitigate in favor of a minimal sentence.

    **1.**    **Specifics of Mr. Gallatin's Case**

        **a.**    **Nature of the Offense.**

There is nothing aggravating about the nature of Mr. Gallatin's offense. Mr. Gallatin never used

any violence of threats of violence in the commission of his offense. While the offense itself is serious, Mr. Gallatin did not even come close to committing the worse form of the offense. Further, Mr. Gallatin's acknowledgement of his ownership of the contraband mitigates the offense.

        **b.**        **Character of Defendant.**

At the time of his initial sentencing, Mr. Gallatin was forty-two years of age. He is now forty-five. Mr. Gallatin graduated from high school in 1977 and attended Wood Tutorial College in Hampstead England in 1980. (PSI at ¶ 91, 92)

Mr. Gallatin married his wife, Gloria, in 1997. Mr. Gallatin became the father figure to Gloria's children, and raised them in a loving home as his own children. He also has a son from his prior marriage. Mr. Gallatin was actively involved with his son prior to his incarceration.

Mr. Gallatin always maintained consistent and steady employment throughout his life. At the time of this offense he was employed full-time with JYM Construction, where he was described as a "good worker." (PSI at ¶ 94) He has also held jobs as a car salesman and photographer. Mr. Gallatin has always been a productive member of society.

At Mr. Gallatin's first sentencing, many letters of support were submitted to this Court from Mr. Gallatin's friends and family, all of which contain very positive and telling comments about Mr. Gallatin. (See Sentencing Memorandum of February 7, 2002) Mr. Gallatin would ask this Court to review these letters again before passing sentence.

Like so many others, Mr. Gallatin's problems began when he became involved with the use of illicit drugs. His drug addiction led him into contact with the criminal justice system. His record clearly demonstrates a history of alcohol and drug abuse, for which he received only minimal treatment prior to his current imprisonment. Also worth noting is the fact that Mr. Gallatin turned himself in to authorities when the instant charges were filed.

Mr. Gallatin has seriously addressed his addiction while in prison. He has undergone treatment and has remained drug-free. Mr. Gallatin is serious about maintaining his sobriety, and he now has the necessary skills to do so.

Perhaps the most telling aspect of Mr. Gallatin's character is how he has conducted himself in prison since first being sentenced by this Court. Usually when this Court sentences a defendant, it cannot foresee how a defendant will conduct himself during imprisonment or how he will approach his rehabilitation. But in this case, by having the opportunity to resentence Mr. Gallatin, this Court is in the unique position to know exactly how Mr. Gallatin conducted himself while in prison . . . as a model inmate.

Since being imprisoned, Mr. Gallatin has paid his felony assessment and fine. He received his GED in August of 2003. Mr. Gallatin has maintained a clear conduct record, has remained drug-free, and has completed numerous programs including drug treatment, and is enrolled in the Life Connections Program and Pre-release courses. The Life Connections Program is an 18 month voluntary, faith-based, residential re-entry program. (See Post-Addendum to Pre-Sentence Report). Mr. Gallatin has worked in several work details where he received good work reports. (See attached Progress Report)

Mr. Gallatin has proven that he has served an adequate term of imprisonment, that he has been rehabilitated, and is ready to become a productive member of society.

Further, Mr. Gallatin is clearly intelligent and has much to offer society upon his release. Mr. Gallatin, acting *pro se* and with the crippling disadvantage of being in prison, was successfully able to get his case into the United States Supreme Court for review. This led to his case being remanded for a new sentence. There is little more that the Bureau of Prisons can offer to Mr. Gallatin as far as vocational training or other education. Mr. Gallatin is not likely to benefit from any further imprisonment.

        **2.    Needs of the Public and Purposes of Sentencing**

Mr. Gallatin owes no restitution, and his crime involved no identifiable victims. Again, this mitigates in favor of a minimal sentence. Mr. Gallatin has already served a just and adequate sentence, and has sufficiently paid his debt to society.

The Bureau of Prisons apparently does not view Mr. Gallatin as a threat. He has worked his

way down from medium custody to minimum out custody.

### 3. Consideration of Guidelines, Types of Sentences Available.

As previously discussed, the Guidelines would advise a sentence of 46 or 57 months. Applying the other statutory factors in 18 U.S.C. § 3553, an even lesser sentence would be appropriate.

Further, one of the primary goals of the Sentencing Reform Act ("SRA"), which remains valid even after *United States v. Booker*, 125 S.Ct. 738 (2005), is the promotion of consistency and proportionality in sentencing. Mr. Gallatin's co-defendant, Kevin Mueller, received a sentence of 48 months. (Docket # 78) This fact cuts in favor of imposing a sentence even more lenient than set forth in the Guidelines. The sentences of Mueller and Mr. Gallatin should be consistent in light of the fact that they had similar criminal records, and engaged in similar conduct. To impose a sentence much in excess of Mueller's 48 months would result in an unwanted sentence disparity. The guideline recommendation of 57 months, while still in excess of Mueller's sentence, would meet the reasonableness standard discussed in *Booker*.

A sentence in excess of this amount would be unreasonable in light of Mr. Gallatin's conduct, the sentence imposed on his co-defendant, and Mr. Gallatin's character.

## III. Conclusion

For all the foregoing reasons, Defendant Gregory Gallatin, respectfully requests this Honorable Court impose a prison sentence of 46-48 months months in the Bureau of Prisons.

Respectfully Submitted,

/s/ Bryan R. Perkins
_____
Bryan R. Perkins (0061871)
Attorney for Defendant
119 E. Court Street
Suite 314

Cincinnati, Ohio 45202
(513) 632-5335
Bperkins@CourtStreetEast.com

### CERTFICATE OF SERVICE

A copy of this Sentencing Memorandum was served upon Kenneth Parker, Asst. U.S. Attorney, through the CM-ECF system on this 11th day of October, 2005.

/s/ Bryan R. Perkins
_____
Bryan R. Perkins
Attorney for Defendant

STATEMENT OF K. Mueller
N-32

12-01-00

I Kevin Mueller met Greg Gallatin approx 1 year ago and became friends. Approx 3 months ago I became aware that he sold marijuana and transported it. On approx the 20th of November 2000 he asked me if I would ride to Dallas, Texas with him and his partner James. He wanted me to rent a car in Dallas to drive back to Cincinnati with marijuana. They would follow me and I would be paid approx $5,000 for doing it. James drove a 95 Suburban and we all were in it tuesday night the 28th about 10:00 P.M. and left for Dallas. We arrived Wednesday the 29th at about 1:00 P.M. Two mexicans came to the motel room and said that it would be ready on thursday. On thursday about noon we went to a mexicans house and he and his two sons loaded the car. They followed me back and we arrived at 8:00 A.M. 12-1-00. Greg unloaded the marijuana into his house on N. Fordam

He then said he wanted me to go to Arizona Tuscon with him and James in a few days.

Kevin Mueller
12-01-00

BP-S187.05C PROGRESS REPORT CDFRM
JUN 98
U.S. DEPARTMENT OF JUSTICE                                    FEDERAL BUREAU OF PRISONS

| Federal Correctional Institution (Milan)<br>P.O. Box 9999 Milan, Michigan<br>(734) 439-1511 | Date<br><br>March 11, 2005 |
|---|---|

**Inmate Reviewed**

| Inmate's Signature | Date | Staff Signature |
|---|---|---|
| X *Greg Gallatin* | 3/11/05 | *[signature]* |

1. Type of Progress Report
☐ Initial Transfer     ☐ Statutory Interim Triennial     Pre-Release     X Other Inmate's request

| 2. Inmate's Name<br>GALLATIN, Gregory | 3. Register Number<br>03383-061 | 4. Age (DOB)<br>45 (12-10-1959) |
|---|---|---|

5. Present Security/Custody Level
   Low/In

6. Offense/Violator Offense

Conspiracy to Distribute Marijuana and Possession with Intent to Distribute Marijuana.

7. Sentence

110 Months/3 Years Supervision $200.00 Felony Assessment and $1,000.00 Fine.

| 8. Sentence Began<br><br>07/29/2002 | 9. Months Served + Jail credit<br><br>18 Months + 531 Days Jail Credit | 10. Days GCT/or EGT/SGT<br><br>216/0/0 |
|---|---|---|
| 11. Days FSGT/WSGT/DGCT<br><br>N/A | 12. Projected Release<br><br>02-08-2009, via Good Conduct Time | 13. Last USPC Action<br><br>N/A |

14. Detainers/Pending Charges
    None Known

15. Co-defendants
    N/A

For continuation Pages, type on a blank sheet with the Inmate's Name, Register No., and Date and attach to this form.
Record Copy - Inmate File; copy - U.S. Probation Office; copy - Parole Commission Regional Office (If applicable); copy - inmate
(This form may be replicated via WP)                                  Replaces BP-s187.058 DTD FEB 94

United States Department of Justice
Bureau of Prisons

### Progress Report

| Name: | Register No.: | Date: |
|---|---|---|
| GALLATIN, Gregory | 03383-061 | 03/11/05 |

16. **Institutional adjustment:**

   a) **Program Plan:**

   Inmate Gallatin last met with his unit team on November 17, 2004, where he was encouraged to enroll and complete one class from core topic #3 by May 2005, save at least $163.00 by May 2005. He was also encouraged to enroll in an Apprenticeship Program and a Non-Residential Drug Program by May 2005, as recommended by the sentencing Judge.

   b) **Work Assignments:**

   Inmate Gallatin has worked on the following work details: Compound Detail; General Food Service; Dining Hall PM/AM; and Recreation Orderly. He is receiving good work reports from his current detail in the Recreation Department.

   c) **Educational/Vocational Participation:**

   Inmate Gallatin has completed the following educational courses: Spinning; Who Moved My Cheese; Leisure-Basics, Weight Management/Wellness Program; National Federal Personal Training; Personal Financial Management; Wellness Class and Yoga. He is currently enrolled in the Life Connections Program and Pre-Release courses.

   d) **Counseling Programs:**

   Inmate Gallatin has completed the following counseling programs: Aids Awareness; Health Hazards/Smoking; Beat the Streets; 40 Hour Drug Awareness Program and Diversity Awareness.

   e) **Incident Reports:**

   Inmate Gallatin has not received any incident reports since his incarceration.

   f) **Institutional Movement:**

   Inmate Gallatin arrived at FCI Milan, Michigan, May 10, 2004. He was designated to Milan to participate in LCP. There has been no further movement in this case.

United States Department of Justice
Bureau of Prisons
Progress Report

| Name: | Register No.: | Date: |
|---|---|---|
| GALLATIN, Gregory | 03383-061 | 03/11/2005 |

g) **Physical and Mental Health:**

He is assigned regular duty with no medical restrictions.

h) **Progress on Financial Responsibility Plan:**

Inmate Gallatin completed his $100.00 Felony Assessment and his $1,000.00 Fine December 16, 2002.

17. **Release Planning:**

Inmate Gallatin has not formulated a release plan at this time.

a) **Residence:** To be secured

b) **Employment:** To be secured

c) **USPO:**   SENTENCING DISTRICT
   **Southern District of Ohio**
   David E, Miller, Chief
   United States Probation Office
   504 U.S. Courthous
   85 Marconi Boulevard
   Columbus, Ohio 43215-2398
   Telephone: (614) 719-3100

d) **Release Preparation Program:**

Inmate GALLATIN is expected to complete the Pre-Release Program by August 1, 2008.

The offender is subject to notification under 18 USC 4042 (b), Violent Crime Control and Law Enforcement Act of 1994, due to his conviction for a crime of violence and drug trafficking.

Typed by: _R Esquibel_ / Ardetta Moody, F/H Unit Manager (734) 439-1511 Ext. 238       3/11/05   Date

Reviewed by: _R Esquibel_ / Reida Esquibel, A Unit Manager       3/11/05   Date

Date Typed: 03/11/05

Record Copy-Inmate File; copy-U.S. Probation Office; copy-Parole Commission Regional Office (if applicable); copy-Inmate